[Crim. No. 3373. First Dist., Div. Two. July 30, 1957.]

THE PEOPLE, Respondent, v. JOE GREEN, Appellant.

Edward T. Mancuso, Public Defender (San Francisco), for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Marvin Christiansen, Deputy Attorney General, for Respondent.

BRAZIL, J. pro tem.*—This is an appeal from a judgment which found defendant guilty of possession of heroin, in violation of section 11500 of the Health and Safety Code, after a court trial; a jury having theretofore been properly waived. Appellant presents three points for consideration, any one of which he claims requires a reversal. (1) The evidence was erroneously admitted, over objection, in violation of the exclusionary rule relating to an unlawful search. (2) Testimony of the main witness was improperly admitted by way of transcript of his testimony taken at the preliminary hearing, again over objection; and (3) the trial judge erred in holding he had to commit the defendant to State prison because of a prior conviction which had not been proved during the trial.

---

*Assigned by Chairman of Judicial Council.

Defendant also appeals from the order denying him a new trial.

Four federal narcotic officers, acting upon information from a reliable informant that narcotics were being sold by one Percy Howard, at 1513 Geary Street, went to those premises on the afternoon of December 12, 1956. Federal agent Prziborowski rang the door bell at the vestibule on the lower floor; Howard, the occupant of the premises, thereupon admitted them after they had identified themselves; raising his hands in a manner to be searched as soon as he found out who they were. When asked if he minded if they searched his premises he said, "no" to go right ahead. This officer promptly placed Howard under arrest downstairs, while Agent Stenhouse and the other two went upstairs. When Prziborowski came upstairs to the living quarters with Howard, Agent Stenhouse already had defendant Green under arrest.

That portion of the testimony of Agent Stenhouse which came in by way of a transcript of his testimony given at the preliminary hearing insofar as it relates to the issues of reasonableness of the search and seizure is substantially as follows: He went past Agent Prziborowski at the doorway, went upstairs to the combination living room and bedroom and saw defendant attempting to hide behind the alcove of a small kitchenette. Green was holding a switchblade type knife in his right hand and held his left hand in a clenched or closed manner. Without permission, and without a search or any kind of warrant, he forced open the clenched fist, after taking the knife away from the defendant. He removed therefrom, what proved later to be, half a grain of heroin in a small white paper bindle and an improvised hypodermic outfit.

He further testified that on entering the upstairs apartment he announced he was a federal narcotics agent, which was simultaneous with his observation of the defendant holding the knife. He told defendant he then was under arrest. When asked for what the defendant was being arrested, he testified that he had reason to believe that the defendant was engaged in the traffic of narcotics; having theretofore gotten such information from Agent Prziborowski. He related further that Green had been the topic of conversation with the other agent that same day at another place and as near as he could recall "possibly during two or three week period." The premises where defendant was searched and arrested were

those of Howard and his wife; and defendant Green was a visitor there, without that fact having been previously known by the narcotic agents. Their original intention in going to the premises was not for the purpose of arresting Green.

█ The mere presence of defendant in a place where narcotics are being or have recently been unlawfully smoked or used could not, without more, have justified the search and arrest without a warrant, for it has recently been held that Health and Safety Code, section 11556, making such conduct unlawful, is unconstitutional. (*Bonwell* v. *Justice Court*, 148 Cal.App.2d 906 [307 P.2d 716].)

█ The mere fact that one is in company of a person reasonably known or believed to have committed a felony, standing alone, is not enough to justify the police in making a search of his person. (*People* v. *Simon*, 45 Cal.2d 645 [290 P.2d 531].) The facts in this case go beyond mere association.

█ The officer who made the search and arrest had reliable information that narcotics were being sold at these premises, he had theretofore been reliably informed by a brother officer that this very defendant had been involved in the narcotic traffic; and further, the defendant's actions, to say the least, added to the suspicious circumstances. All these circumstances which were known at the time of arrest to Agent Stenhouse certainly add up to enough to "lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion that the person accused is guilty." (*Montgomery* v. *Superior Court*, 146 Cal.App.2d 622 [304 P.2d 206].) The trial court was justified under the facts of this case in holding that there was reasonable cause at the time of arrest, without at all considering that the search actually resulted in finding the narcotic and hypodermic outfit.

Respondent presents a further reason for affirmance which has not yet, to our knowledge, been passed upon by an appellate court of this state and that is: "Even if there had been an illegal search and seizure, the evidence was admissible since there was no evidence of state cooperation." Reliance is placed on *Feldman* v. *United States*, 322 U.S. 487 [64 S.Ct. 1082, 88 L.Ed. 1408, 154 A.L.R. 982], wherein it appears at page 492, "while evidence secured through unreasonable search and seizure by federal officials is inadmissible in a federal prosecution (citations), incriminating documents so secured by state officials without participation by federal officials but turned over for their use are admissible in a federal prosecution." This was a four to three decision; two

of the justices not participating. Respondent claims the reverse should be true in California, i.e. where the unlawful search and seizure is by federal officers without state knowledge or cooperation, the state may use such evidence in a trial before a state court. We purposely refrain from passing upon the question as it is not necessary to this decision, in view of our holding that there was here a reasonable search and seizure by the arresting officer.

We find no error in the admission of Stenhouse's testimony by way of the transcript of testimony taken at the preliminary hearing. At the time of trial and for several months before that he was permanently stationed in Chicago, Illinois. If he actually was not in California, no amount of diligence could locate him there. Appellant argues that the court abused its discretion in finding that the witness was out of state, for only Officer Prziborowski testified to that fact. The appellant had ample opportunity to cross-examine the witness on this subject, had he chosen to do so; but contented himself with the objection that the plaintiff had not produced sufficient evidence to prove the fact.

The question as to what will constitute due diligence to secure the presence of a witness which will authorize the reading of such witness' testimony taken at the preliminary hearing when such witness is shown to be unavailable, is largely within the discretion of the trial court and depends on the facts of each particular case. ''The decision of a trial judge on the question of diligence and of the propriety of receiving or rejecting the evidence will not be disturbed on appeal unless it appears that there was an abuse of discretion.'' (*People* v. *Cavazos*, 25 Cal.2d 198 at p. 201 [153 P.2d 177].)

In *People* v. *McIlvain*, 55 Cal.App.2d 322 at page 326 [130 P.2d 131], the court held that there was sufficient foundation for the introduction of evidence of the prosecutrix given at the preliminary upon the testimony of the district attorney's investigator that he ascertained the witness was in Colorado by talking to her sister, and by showing the court a letter received from her mother stating that prosecutrix was in Colorado. In the instant case the absence of the witness from California was testified to directly in court by one apparently having personal knowledge of the fact.

In *People* v. *McNabb*, 63 Cal.App. 732 at page 735 [219 P. 1031], the evidence was admitted by way of transcript, on testimony of the witness' brother that he was in Mexico. ''The

uncontradicted and unqualified statement of the brother justified the trial court in concluding that at the time of the trial the witness Cecil Coons could not with due diligence be found within the state of California.''

Appellant cites *People* v. *Kuranoff*, 100 Cal.App.2d 673 [224 P.2d 402] and *People* v. *Andrade*, 101 Cal.App.2d 509 [225 P.2d 289], in both of which it was held that the foundation of due diligence was insufficient. These cases are simply not like this one for in each of them there was no direct testimony that the witness was actually out of the state. There was in each no showing that the witness could not have been found in the state, if there had been sufficient effort to locate him. There was no creditable testimony that the absent witness was actually out of the state.

The defendant was represented by counsel at the preliminary hearing and he had a full opportunity to cross-examine the witness. The rule of admission (Pen. Code, § 686, subd. 3) is not changed if counsel refrained from conducting a full cross-examination because he believed he would have a second opportunity to do so at the trial. ''It having been made to appear that the witness was outside of the state of California, it would have been useless for the prosecution to show what effort had been made by it to secure the attendance of the witness . . . *since there was no legal process by which he could have compelled such attendance.*'' (*People* v. *Padilla*, 81 Cal.App. 528 at page 532 [254 P. 585].)

Finally, appellant's claim that the trial judge was of the belief at time of pronouncement of sentence that the law compelled him to impose a state prison sentence, is not borne out in the slightest degree by the record. As a matter of law, sentence to state prison was not mandatory and nowhere can we find that the trial judge thought it so. In *People* v. *Burke*, 47 Cal.2d 45 [301 P.2d 241], the Supreme Court held that the trial court has power to strike or dismiss a proceeding as to a prior conviction under Penal Code, section 1385. In *People* v. *Harris*, 146 Cal.App.2d 142 [304 P.2d 178], the trial judge was greatly disturbed because he was unable to grant probation with the statement that the law made it mandatory that he sentence appellant to state prison, that he had no alternative. Health and Safety Code, section 11712, allows the court to sentence the appellant to the state prison for a first offense of possession. There is no reason why the judge could not consider the appellant's past record even though that information came to him by way of a probation

officer's report and send him to state prison rather than to the county jail or grant probation.

The few remarks of the judge, to the appellant's attorney just before sentence was pronounced, clearly indicate he knew the applicable law viz: "If he is a sick man, we should be trying to help rather than punish him. Don't you feel he would get better treatment at Vacaville rather than sitting out a year in the county jail? . . . I think I'm doing him a service by sending him to a State prison."

The order denying a new trial and the judgment are affirmed.

Dooling, Acting P. J., and Draper, J., concurred.