[Crim. No. 6159. First Dist., Div. Four. Feb. 21, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. BENJAMIN FRANKLIN SCOTT, JR., Defendant and Appellant.

Cary G. Branch for Defendant and Appellant.

Thomas C. Lynch, Attorney General, John T. Murphy and John F. Henning, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

CHRISTIAN, J.—This is an appeal from an order admitting defendant to probation upon conviction of violation of Health and Safety Code, section 11530 (possession of marijuana). The order must be reversed because the court erroneously sustained an objection to a question as to the identity of an informer who was a material witness; therefore we shall deal only with those of appellant's further contentions which may come into question on retrial.

On May 28, 1965, Officer Olson of the Los Angeles Police Department made and presented to a magistrate an affidavit for issuance of a search warrant. The affidavit related that Officer Olson had received information from an untested informant, whose identity affiant wished to keep secret, that "in the latter part of April, 1965, a male Negro, who he described as aged 22, 5 feet 6, 130 pounds, and known to informant as 'Ben,' delivered to him a one-half can of marijuana at the address of 1584½ East 51st Street in the City of Los Angeles." Affiant determined that appellant matched the description, had a prior narcotic arrest, and lived at 1584½ East 51st Street. On May 17, 1965, affiant observed a 1958 Dodge, license IJV-633, being driven away from the premises. That license was found to be registered to a 1962 Buick. When the driver of the Dodge returned, he and appellant

entered the residence. On May 18, 1965, affiant saw appellant seated in the Dodge.

The affidavit continued: Officers Paillet, Velasquez, and Landry told affiant that they too were investigating narcotic activities at 1584½ East 51st Street. These officers related to affiant certain information they had received from a reliable informant. This informant had participated in over 50 cases and in each his information proved correct and led to a conviction. On May 10, 1965, the informant was with one Larry Weathers at a place one block from 1584½ East 51st Street, where Weathers received some marijuana from an unnamed person. Eleven days later Officer Landry was present at 1584½ East 51st Street and the same person who made the delivery on May 10 told the informant that he did not have any marijuana at the residence then, but would have some there on May 24, 1965. (The person who made the delivery on May 10 and the statement on May 21 was not identified.) Weathers was arrested on May 21, 1965, for sale of marijuana to a police officer. At the time of his arrest, he possessed a slip of paper bearing the telephone number of appellant's brother, Paul Scott.

A warrant was issued authorizing the search of appellant's person and of the premises and the automobile described in the affidavit. That evening (May 28) five officers went to the Scott residence armed with the search warrant. The Dodge automobile described in the warrant was parked in the driveway. As the officers arrived appellant came out of the house and got into the Dodge. One officer went immediately to the house, knocked and called out ''Sheriff's officers.'' At about the same time the horn of the Dodge began to sound, and the officer who was about to enter the house saw appellant in the front seat of the car struggling with one of the officers. Believing that appellant was attempting to signal persons inside the house, the officer who had knocked immediately forced an entry. He announced his mission to appellant's father and mother, and to one Hollimon, who were all in the back bedroom. As the officer led them into the living room, appellant's other brother, Shelby, emerged from the front bedroom flailing his arms. After subduing Shelby, the officer searched the front bedroom and found more than one pound of marijuana. Meanwhile, another officer entered; as the search continued a further one-half pound of marijuana was found under a piece of furniture in the living room, a brown bag containing marijuana was found on the roof of the garage

adjacent to the front bedroom, and marijuana debris and seeds were found in a shoebox under the bed in the front bedroom. Two marijuana cigarettes were found in the trunk of the car, and marijuana seeds and debris were found on the floor of the car.

Appellant and the others in the house were arrested and charged with violation of Health and Safety Code, section 11530.5 (possession of marijuana for sale). Hollimon and the senior Scotts were not held to answer following the preliminary hearing.

At the trial of appellant and Shelby, an officer testified that all the occupants of the house admitted that they resided there. Mr. and Mrs. Scott, Sr. said they used the back bedroom. Mr. Hollimon occupied the center bedroom. Appellant said he stayed in the front bedroom. Shelby said he slept in the dining room and living room and used the front bedroom occasionally. At the trial both Shelby and appellant denied making any such statements.

The trial court sustained objections to defense questions regarding the identity of the "reliable informant." Appellant and Shelby Scott in their testimony denied possessing marijuana or having any knowledge of its presence in the house. Shelby was found not guilty and appellant, who had been charged with possessing marijuana for sale, was found guilty of the included offense of possession.

Having moved before the trial to quash the search warrant and suppress the evidence found in the search, appellant renews his attack on the sufficiency of the affidavit to support the issuance of a search warrant. Although the warrant purportedly authorized a search of appellant's person, the record does not show that any such search was actually made and the evidence upon which the conviction depends was produced chiefly in the search of the house. However, significant evidence was found in the car, and the validity of the warrant must therefore be determined as to both the house and the car. ■■ A search warrant may refer to designated contraband which there is probable cause to believe will be found at the place named. (Pen. Code, §§ 1524, 1528.) And where the object of the warrant is to search a place, there is no need to name or describe a person. (*Williams* v. *Justice Court* (1964) 230 Cal.App.2d 87, 101 [40 Cal.Rptr. 724].) Here the affidavit sought authorization for the search of two places: the Dodge automobile and the house.

■■ Probable cause for the issuance of a search warrant is

approximately the same as that which justifies an arrest without a warrant. (*Williams* v. *Justice Court, supra,* 230 Cal. App.2d 87, 94; *People* v. *Govea* (1965) 235 Cal.App.2d 285, 296 [45 Cal.Rptr. 253].) Reasonable and probable cause exists if a man of ordinary care and prudence would be led to conscientiously entertain an honest and strong suspicion that the accused is guilty (or that contraband is present). (*People* v. *Cockrell* (1965) 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116]; *People* v. *Alvarado* (1967) 250 Cal.App.2d 584, 591 [58 Cal.Rptr. 822].) ▇ Reasonable cause may be established by information received from others and is not limited to evidence admissible at a trial. (*Willson* v. *Superior Court* (1956) 46 Cal.2d 291, 294 [294 P.2d 36].) ▇ Information provided by an anonymous or untested informant cannot alone establish a sufficient basis for a lawful search. (*People* v. *Amos* (1960) 181 Cal.App.2d 506, 508 [5 Cal.Rptr. 451].) However, if investigation or observation of the suspect corroborates the untested informant's report, a lawful search may be made if the combined information gives probable cause. (*People* v. *Reeves* (1964) 61 Cal.2d 268, 273-274 [38 Cal. Rptr. 1, 391 P.2d 393]; *People* v. *Amos, supra.*) ▇ Probable cause for the issuance of a search warrant may be based solely on information furnished by a reliable informant if the affidavit is factual in nature rather than conclusionary and informs the magistrate of the basis from which the officer concluded that the informant was credible or his information reliable. (*United States* v. *Ventresca* (1965) 380 U.S. 102, 108 [13 L.Ed.2d 684, 688, 85 S.Ct. 741]; *People* v. *Keener* (1961) 55 Cal.2d 714, 721 [12 Cal.Rptr. 859, 361 P.2d 587] [disapproved as to another point, *People* v. *Butler* (1966) 64 Cal.2d 842, 844-845 [52 Cal.Rptr. 4, 415 P.2d 819]]; *People* v. *Tillman* (1965) 238 Cal.App.2d 134, 138 [47 Cal.Rptr. 614].)

▇ Because the informer was untested, the information given Officer Olson that on May 7, 1965, a male Negro, aged 22, 5' 6", 130 pounds, named Ben, delivered some marijuana to the informer at 1584½ East 51st Street would be insufficient by itself to constitute probable cause for the issuance of a search warrant. The affidavit therefore shows an attempt to corroborate the informant's story. It recites that upon investigation the officer discovered that appellant matched the description, lived at the address, and had a narcotic arrest. On May 17, 1965, affiant also observed a maroon Dodge being driven away from the premises. The license on this car was registered to a 1962 Buick. Later that day, appellant entered

the residence with the driver of the Dodge. The following day affiant saw appellant seated in the back seat of the Dodge. In *People* v. *Amos, supra,* 181 Cal.App.2d 506, an untested informant told police he purchased marijuana from someone at a certain address. The prosecution contended that since the suspect was seen leaving that address, the informant's story was corroborated. But the officers observed no abnormal conduct indicative of any violation, therefore the story was not corroborated and probable cause did not exist. Thus information that appellant actually lived at 1584½ East 51st Street and drove a car in that vicinity is not sufficiently corroborative of the informant's statement. (*People* v. *Cedeno* (1963) 218 Cal.App.2d 213, 223 [32 Cal.Rptr. 246]; see also *People* v. *Goodo* (1956) 147 Cal.App.2d 7 [304 P.2d 776].)

■ Furtive or suspicious conduct under certain circumstances may also corroborate the statement of an untested informant. (*People* v. *Cedeno, supra,* at pp. 224-225; *People* v. *Prieto* (1961) 191 Cal.App.2d 62, 69 [12 Cal.Rptr. 577], cases collected, [disapproved as to another point, *People* v. *Butler* (1966) 64 Cal.2d 842, 844-845 [52 Cal.Rptr. 4, 415 P.2d 819]].) But appellant's presence in a car which had license plates registered to another car, and his presence in a house near where the car was parked, have no tendency to show that he was then in possession of marijuana.

■ An investigation which reveals that a suspect has a narcotic record does not by itself sufficiently corroborate the informer's story as to the essential fact, i.e., that the suspect was presently violating the law. (*People* v. *Reeves, supra,* 61 Cal.2d 268, 274; *People* v. *West* (1965) 237 Cal.App.2d 801, 807 [47 Cal.Rptr. 341].) ■ Although in determining whether probable cause exists, a suspect's criminal record is relevant (*People* v. *Perez* (1961) 189 Cal.App.2d 526, 533 [11 Cal.Rptr. 456] [disapproved as to another point, *People* v. *Underwood* (1964) 61 Cal.2d 113, 125 [37 Cal.Rptr. 313, 389 P.2d 937]]; *People* v. *Zabala* (1963) 217 Cal.App.2d 550, 553 [31 Cal.Rptr. 712]), the officer's discovery that appellant had a narcotic arrest does not justify the conclusion that he then possessed narcotics or sufficiently corroborate the untested informant. The facts thus far considered do not adequately corroborate the story of the untested informant.

■ Officer Olson's affidavit went on to relate information received by fellow officers from another informant. The affidavit stated that this person had given accurate information in over fifty narcotics cases; thus it declared to the

magistrate the informant's reliability and credibility. (See *Aguilar* v. *Texas* (1964) 378 U.S. 108, 114 [12 L.Ed.2d 723, 728, 84 S.Ct. 1509].) This reliable informant told the officers that a suspect, whom he did not identify, delivered marijuana to Larry Weathers near the house on May 10. One of affiant's fellow officers, Sergeant Landry, was present at the house on May 21 when the same unnamed suspect told the same reliable informant (apparently out of the officer's hearing) that he did not then have marijuana at the house but would have some there on May 24. Thus the informant had personal knowledge of circumstances tending to show that someone would have marijuana at the house four days before the search was made. It is contended by the People that this information, coupled with the delivery of marijuana by the same suspect at a nearby point on May 10, and the incident late in April related by the untested informant, gave reasonable cause to believe that marijuana would be found at the house. But nothing beyond the story of the untested informant indicated that appellant was the one who possessed the contraband, and the only references to the Dodge in the affidavit are neutral so far as concerns marijuana. We therefore conclude that the warrant was ineffective to authorize a search of the automobile and appellant's person, and that the marijuana found in the car should have been excluded.

▪ Other problems must be considered in regard to the search of the house. Appellant contends that the information recited in the affidavit was stale and too remote to justify the issuance of a search warrant, citing *Sgro* v. *United States* (1932) 287 U.S. 206 [77 L.Ed. 260, 53 S.Ct. 138, 85 A.L.R. 108]. The untested informant received narcotics from appellant in the latter part of April. On May 10, a reliable informant was with Larry Weathers when the latter received some marijuana. On May 21, someone told the informant that he would have marijuana at the house on May 24. The affidavit was filed on May 28. We do not regard that as an unreasonable lapse of time. (See *People* v. *Nelson* (1959) 171 Cal.App.2d 356 [340 P.2d 718] [disapproved as to another point, *People* v. *Butler* (1966) 64 Cal.2d 842, 844-845 [52 Cal.Rptr. 4, 415 P.2d 819]].) The affidavit shows probable cause that marijuana was then present, when the information which had been received three days before, coupled with the story of the untested informer, suggested that a regular business of dealing in marijuana was being conducted at the place

in question. (*People* v. *Tillman, supra,* 238 Cal.App.2d 134, 139.)

▮ Appellant next argues that the information given Officers Velasquez, Paillet and Landry by the reliable informant and attested by Officer Olson cannot justify the issuance of the warrant because it is hearsay on hearsay. ▮ A magistrate's finding of probable cause may rest upon the hearsay statement of an informant as long as there is a substantial basis, in the facts related in the affidavit, for crediting the hearsay. (*Aguilar* v. *Texas, supra,* 378 U.S. 108, 114 [12 L.Ed.2d 723, 728]; *Jones* v. *United States* (1960) 362 U.S. 257, 269 [4 L.Ed.2d 697, 707, 80 S.Ct. 725, 78 A.L.R.2d 233]; *People* v. *Prewitt* (1959) 52 Cal.2d 330, 337 [341 P.2d 1].) ▮ But here the informant's hearsay statement was conveyed to Officer Olson through further hearsay statements by the sheriff's deputies. So were the facts attesting to the informant's reliability. A comparable problem was presented in *People* v. *Pease* (1966) 242 Cal.App.2d 442, 450 [51 Cal.Rptr. 448], in which the Court of Appeal held:

"[T]he mere fact that information . . . comes from a fellow officer as a hearsay statement not based on . . . personal observations does not justify the conclusion that reliance thereon is reasonable in the absence of evidence showing that the informant originally transmitting the information to the police was reliable or that such information had its source in official police files or records. Absent the conditions indicated above, such statements of a fellow officer, being hearsay on hearsay, cannot by themselves constitute reasonable cause or reasonable grounds for police action of the kind here involved." That is not to say that information which came to the affiant as hearsay on hearsay must be utterly disregarded. Here the total picture presented to the magistrate was a mosaic, made up of bits of information developed by Officer Olson's own investigations and the material brought in by the two informants. The diverse scraps of information are mutually corroborative, and taken as a whole they strongly suggest that someone was repeatedly dealing in marijuana at the house desired to be searched. The Fourth Amendment does not say that "probable cause" for the issuance of a search warrant can be derived only from evidence which would be admissible over objection at a trial. Thus while *Pease* and *People* v. *Harvey* (1958) 156 Cal.App. 2d 516, 523 [319 P.2d 689], held that hearsay upon hearsay could not, *by itself,* provide probable cause for an arrest with-

out a warrant, and while upon the same reasoning it could not by itself support issuance of a search warrant, the magistrate can consider such evidence as part of the total factual situation offered to show probable cause. ■ Searches pursuant to a warrant are to be favored over searches resulting from the spontaneous judgment of a police officer. (*Aguilar* v. *Texas, supra,* 378 U.S. 108, 111 [12 L.Ed.2d 723, 726].)

■ An affidavit for a search warrant is to be interpreted in a realistic and commonsense fashion (*United States* v. *Ventresca, supra,* 380 U.S. 102, 108 [13 L.Ed.2d 684, 688]) and a reviewing court should find a warrant invalid only if the affidavit is insufficient as a matter of law. (*People* v. *Aguilar* (1966) 240 Cal.App.2d 502, 507 [49 Cal.Rptr. 584].)

■ Officer Olson's affidavit is in sharp contrast to the affidavit in *Aguilar* v. *Texas, supra,* which recited without any supporting data: "Affiants have received reliable information from a credible person and do believe that [narcotics and paraphernalia] are being kept at the above described premises. . . ." We conclude that Officer Olson's affidavit was sufficient to afford reasonable grounds to believe that contraband would be found on the premises.

■ Appellant's next contention is that the evidence found in the search of the house should have been excluded because the officer made a forcible entry. Penal Code, section 1531 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance." Appellant correctly points out that here the officer forced an entry before he had been refused admittance. ■ Strict compliance with the requirements of section 1531 is excused when the circumstances reasonably require it. (*People* v. *Barthel* (1965) 231 Cal.App.2d 827, 832 [42 Cal.Rptr. 290]; *People* v. *Villanueva* (1963) 220 Cal.App.2d 443, 447 [33 Cal.Rptr. 811].) ■ An officer executing a warrant authorizing a search for narcotics does not, because the contraband is easily disposed of, enjoy a blanket authorization to make an unannounced forcible entry. (*People* v. *Gastelo* (1967) 67 Cal.2d 586 [63 Cal.Rptr. 10, 432 P.2d 706].) ■ But here the officer had reason to believe that although appellant was outside in the car other parties were within the house. It was not unreasonable for him to believe that appellant sounded the car horn for the purpose of signaling someone inside the house to destroy the contraband and thus frustrate the search which

had been authorized by the warrant. Under these circumstances it was proper for the officer to make immediate entry.

 It is also contended that the warrant could not authorize sheriff's deputies to make a search within the limits of the City of Los Angeles. But the warrant was directed to "any Sheriff . . . in the County of Los Angeles" and Penal Code, section 1530 provides "a search warrant may in all cases be served by any of the officers mentioned in its directions. . . ." Moreover, the jurisdiction of the sheriff in law enforcement matters normally extends throughout his county including the incorporated areas thereof. (See 8 Ops.Atty. Gen., p. 149.)

During cross-examination of one of the officers who participated in the search and the arrest, it was established that the witness knew the identity of the reliable informant referred to in the affidavit. When defense counsel asked for the informant's name, the court, without comment or explanation, sustained a general objection to the question. The prosecutor did not explicitly exercise the statutory privilege of nondisclosure of the identity of an informant[1]; however that privilege had been claimed during the taking of evidence at a hearing in the municipal court upon a defense motion to quash the search warrant and it is possible that the trial judge considered that his ruling upon the objection was equivalent to a ruling sustaining a claim of privilege. But it is also possible that the judge sustained the objection because he thought the question was immaterial. We shall consider both possibilities.

 In the present case it was claimed by appellant that he did not live at 1584½ East 51st Street, that he arrived at the house only one-half hour before the raid, and that he had no knowledge of the presence of narcotics. It was the reliable informant who directed the finger of suspicion at someone. (That person was not identified in the affidavit.) If the informant had been required to testify he might have established that it was one of appellant's brothers, or some other person, who delivered marijuana to Larry Weathers on May 10, intended to have a supply of marijuana in the house on May 24, and hence, by inference, was in possession of the marijuana found in the search. The informant's testimony might also have corroborated appellant's story that he lived at a different address and innocently arrived just before the officers came to search the house. We conclude that the

---

[1]Then Code of Civil Procedure, sections 1881, subdivision 1, 1881, subdivision 5; see Evidence Code, sections 1040 to 1042.

identity of the informant was material and that the general objection to the question should have been overruled.

■ If it was the prosecutor's intention to claim the privilege of nondisclosure, the correct way to do that would have been to make a clear statement to that effect. If the court allowed the claim of privilege, the defense would be entitled to move to dismiss the action upon the contention that the reliable informant was a material witness whose identity should have been disclosed. (See *People* v. *Garcia* (1967) 67 Cal.2d 830 [64 Cal.Rptr. 110, 434 P.2d 366]; *People* v. *Perez* (1965) 62 Cal.2d 769, 773 [44 Cal.Rptr. 326, 401 P.2d 934]; *People* v. *McShann* (1958) 50 Cal.2d 802, 807 [330 P.2d 33].)

Upon a new trial, if privilege is unequivocally claimed and allowed, a motion to dismiss the action will inevitably follow. It is therefore appropriate that we briefly review the authorities governing that situation. ■ No disclosure of the identity of an informant is required where he has simply pointed the finger of suspicion at a person who violated the law. He sets in motion investigatory work which causes the defendant to be suspected and perhaps arrested, but he plays no part in the criminal act and has no material evidence to give. ■ But the cases uniformly hold that if an informant was a participant in the act his identity must be revealed. (*Roviaro* v. *United States* (1957) 353 U.S. 53, 60-61 [1 L.Ed.2d 639, 644-645, 77 S.Ct. 623]: *People* v. *Lawrence* (1957) 149 Cal.App.2d 435, 450 [308 P.2d 821].) Here the informer was not a participant. But compulsory disclosure is not limited to the participant informer. (*People* v. *Garcia, supra,* 67 Cal.2d 830, 837-838.) In *People* v. *Williams* (1958) 51 Cal.2d 355 [333 P.2d 19], defendant was convicted on two counts of selling narcotics. A police officer, the prosecution's only witness, made two purchases from defendant; the first was initiated by an informant. The court held that the informant was a material witness on the issue of guilt with respect to the first sale. Since he saw and knew the seller, he *might* have testified that defendant was not the seller. Thus it was error not to require disclosure of his identity. (See also *People* v. *Durazo* (1959) 52 Cal.2d 354 [340 P.2d 594, 76 A.L.R.2d 257].)

In *People* v. *Perez, supra,* 62 Cal.2d 769, defendant was convicted of possession of marijuana. There an officer obtained a search warrant on the basis of an informant's statement that he had observed marijuana in defendant's room. Marijuana was found in a package in defendant's room, but

defendant testified that someone else "planted" the package. The court pointed out that if the informant was the person who left the package in defendant's room, he would be a participant. Moreover, the informant's testimony *might* have confirmed defendant's testimony that he did not know the marijuana was in his possession. The conviction was reversed. In *People* v. *Garcia, supra,* 67 Cal.2d 830, defendant was convicted of possession of heroin and marijuana. Officers received information from two informants that narcotics were present at a certain bar and apartment. These persons were named as suspects in the affidavit for search warrant; defendant was not named. Five persons were arrested at the apartment. Defendant testified that he arrived at the apartment thirty minutes before the raid; he denied owning the narcotics. The court said that the informant's testimony *might* have supported the defense that defendant was just a visitor, and that the narcotics belonged to others. The conviction was reversed because of the refusal to identify the informant. Thus the rule is that wherever the disclosure of the informant's identity might prove materially beneficial to a defendant, disclosure is required. It is not required that a defendant show that he has reason to expect favorable testimony from the informant. (*People* v. *Perez, supra,* 62 Cal.2d 769, 773-774; *People* v. *Garcia, supra,* 67 Cal.2d 830, 839-840; *People* v. *Montano* (1966) 244 Cal.App.2d 555, 564 [53 Cal. Rptr. 145].) We have already indicated the materiality of the evidence that could have been given by the informer. We conclude that if the prosecution claims privilege as to the identity of that informant it will be the court's duty to dismiss the action upon appellant's motion.

The order is reversed.

Devine, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied March 22, 1968.